IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN KLINE, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BERNARD BRUNWASSER, et al., | : | No. 12-2141 |
| Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                                June 12, 2012

John Kline asserts that Defendants Bernard Brunwasser, Francis Meiers, Lorin Fields, Kristina Crosby, Lorelei Larson, William Richards, and the City of Philadelphia conspired to have him fired from his job with the Philadelphia Water Department. He claims that Defendants falsely accused him of violating Philadelphia's residency requirement for employment in his position. This case was removed from the Philadelphia Court of Common Pleas. Kline's Amended Complaint includes a number of federal and state claims. Defendants filed a motion to dismiss the Amended Complaint. For the reasons that follow, the Court grants the motion to dismiss the federal claims, declines to exercise supplemental jurisdiction over the state law claims, and remands this action.

## I.      BACKGROUND

Kline was a surveyor for the Philadelphia Water Department Survey Unit from 1985 to 2005. (Am. Compl. ¶ 11.) In 2003, at the request of the chief surveyor, Frances Bevenour, Kline disciplined a Water Department employee named Michael Manley for poor job performance. (*Id*. ¶ 12.) Manley then complained to the City of Philadelphia that Kline was not eligible for employment with the Water Department because he did not live in Philadelphia. (*Id*. ¶ 13.) "At all

times during his employment by the Water Department, Kline met the residency requirement imposed by the Philadelphia City Code as he resided within the City of Philadelphia." (*Id*. ¶ 15.) Because of Manley's accusation, the Office of the Inspector General assigned Defendant Kristina Crosby to investigate Kline's residency. (*Id*. ¶ 16.) Defendant William Richards conducted surveillance of Kline from December 2004 until January 2005 to determine his residency. (*Id*. ¶ 17.) During this time, Kline was on vacation for all but two days, and thus he was not at work. (*Id*.) "No action was taken as a result of his investigation which showed that Kline resided in the City of Philadelphia and therefore met the City Residence Requirements." (*Id*. ¶ 18.) Richards conducted additional surveillance from August 8 to August 29, 2005, but again Kline was on vacation, and therefore he was away from his Philadelphia home except for August 24, 2005. (*Id*. ¶ 19.) Richards represented that his surveillance was done during Kline's regular work schedule, though he knew that was untrue. (*Id*.)

As part of Crosby's investigation, she attempted to coerce a confession from Kline that he failed to comply with Philadelphia's residency requirement. (*Id*. ¶ 20.) Crosby threatened to turn over her findings, which included false accusations, to the Water Department and seek Kline's termination. (*Id*.) She also made false claims about her investigation to intimidate Kline. (*Id*. ¶¶ 21-22.) Crosby submitted the results of her investigation to the Water Department though she knew her findings did not support a dismissal. (*Id*. ¶ 24.)

Despite the inadequate investigation, Defendant Bernard Brunwasser scheduled a pre-disciplinary hearing to decide Kline's residency, although the Philadelphia County Code allows only the City Controller's Office to determine an employee's residency. (*Id*. ¶ 26.) Defendant Francis Meiers was assigned to conduct the hearing and Defendant Lorin Fields presided over the hearing.

(*Id*. ¶ 27.) Fields, the head of the personnel department, had three years previously denied Kline's request for a waiver of Philadelphia's residency requirement. (*Id*. ¶ 28.) Defendants ignored Kline's evidence and he was fired from his job on December 8, 2005 because he failed to comply with the City of Philadelphia's residency requirement. (*Id*. ¶¶ 29-31.) He was fifty-two when he was fired, and he was replaced by a forty-two-year-old. (*Id*. ¶ 32.)

Kline appealed his dismissal to the Civil Service Commission, and on April 26, 2007, following numerous hearings, Kline was reinstated with full back pay and benefits. (*Id*. ¶ 33.) The City of Philadelphia filed a motion for reconsideration of the Civil Service Commission's ruling and, after that motion was denied, filed an appeal to the Court of Common Pleas of Philadelphia. (*Id*. ¶ 34.) The Court of Common Pleas upheld the Civil Service Commission's decision because "the City's investigation and evidence fell woefully short rendering the City's conclusions indefensible." (*Id*. ¶ 35.) The City of Philadelphia appealed to the Commonwealth Court. (*Id*. ¶ 36.) On May 15, 2009, the Commonwealth Court affirmed the lower court's ruling, and the City of Philadelphia requested reargument with the Commonwealth Court, which was denied on July 16, 2009. (*Id*. ¶¶ 37-38.)

Kline was reinstated on November 1, 2009. (*Id*. ¶ 40.) However, as a result of the City of Philadelphia's insistence on pressing its claim against Kline, he was denied compensation for his retroactive pay from December 9, 2005 until March 8, 2010. (*Id*. ¶ 39.) Defendant Meiers instructed the payroll department to deduct $16,000 from Kline's retroactive pay. (*Id*. ¶ 41.) "This was done solely for the purpose of inflicting additional emotional and financial injury on Kline." (*Id*.) Ultimately, the investigation, Kline's termination, and Defendants' actions throughout the entire ordeal caused Kline to suffer a "severe nervous breakdown which necessitated his premature

3

retirement from his position as Surveyor for the City of Philadelphia Water Department." (*Id*. ¶ 44.)

Kline claims that Defendants denied him due process of law and equal protection of the law, that they conspired against him to deprive him of his civil rights, and that Defendants both wrongfully used civil proceedings against him and abused the legal process. He also charges Defendants with negligence, intentional infliction of emotional distress, and wrongful discharge.

Kline initiated his lawsuit by filing a Writ of Summons in the Philadelphia Court of Common Pleas on May 16, 2011. On April 20, 2012, a notice of removal was filed based on the presence of a federal question. Although Plaintiff filed a motion to remand, he has since withdrawn that motion.

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d

224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a motion to dismiss for failure to state a claim. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

If the allegations in the complaint establish that the claims were brought outside the statute of limitations, the claims are subject to dismissal for failure to state a claim. *White v. The Hon Co.*, Civ. A. No. 11-4919, 2012 WL 1286404, at *2 (E.D. Pa. Apr. 13, 2012); *see also Stratton v. Nieves*, Civ. A. No. 11-7410, 2012 WL 1156113, at *1 (E.D. Pa. Apr. 6, 2012) ("Generally, a statute of limitations defense must be raised in an answer, not under a Rule 12(b) motion. However, under the law of the Third Circuit, defendants may raise a limitations defense under Rule 12(b)(6) if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" (quoting *Robinson v. Johnson*, 313 F.3d 128, 1235 (3d Cir. 2002))).

III.    **DISCUSSION**

A.      **Statute of Limitations for Federal Claims**

1.    *Civil rights claims*

Plaintiff's first cause of action contends that Defendants deprived him of his due process and equal protection rights when he was terminated. He also charges Defendants with conspiring to deprive him of the equal protection of the laws in violation of 42 U.S.C. § 1985. In addition, Plaintiff asserts a claim under 42 U.S.C. § 1986 for neglecting to prevent such a conspiracy.

a.    *Individual defendants*

To obtain relief in a Section 1983 action, a plaintiff must show that a defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *See, e.g.*, *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws or equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) injury to a person or property or deprivation of any right or privilege of U.S. citizenship; and (5) that the defendants were motivated by class-based discriminatory animus. *See Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006); *Schnabel v. Bldg. & Constr. Trades Council*, 563 F. Supp. 1030, 1039 (E.D. Pa. 1983). Finally, 42 U.S.C. § 1986 states in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

6

A § 1986 claim requires a valid § 1985 claim. *Gorman v. City of Chester*, Civ. A. No. 11-6340, 2012 WL 1646009, at *3 (E.D. Pa. May 9, 2012).

When calculating the statute of limitations for claims brought under 42 U.S.C. § 1983, federal courts look to the state's personal injury law to determine the appropriate statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). As Plaintiff's claims brought under Sections 1983 and 1985 originated in Pennsylvania, the Court must look to Pennsylvania law to determine the appropriate statute of limitations. *See Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000). Pennsylvania has a two-year statute of limitations for personal injury actions. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing 42 Pa. Cons. Stat. § 5524(2)); *Garland v. US Airways, Inc.*, 270 F. App'x 99, 103 (3d Cir. 2008). Plaintiff's § 1986 claim carries with it a one-year statute of limitations. 42 U.S.C. § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").

The accrual date of a § 1983 cause of action is a question of federal law. *Wallace*, 549 U.S. at 388. Under federal law, the statute of limitations commences when the plaintiff knows or has reason to know of the injury that is the basis of the § 1983 claim. *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998); *see also Little v. City of Phila.*, Civ. A. No. 07-5361, 2008 WL 2704579, at *2 (E.D. Pa. July 3, 2008) ("A cause of action filed under §§ 1981, 1983, 1985 or 1986 accrues when the plaintiff knows of should know that his or her constitutional rights have been violated.").

With respect to Defendants Brunwasser, Crosby, and Richards, the Amended Complaint includes no allegations that they took any action against Kline after December 8, 2005. The Amended Complaint includes no allegations against Defendant Lorelei Larson; she is only listed in

7

the caption. Plaintiff's claims against Meiers also took place on or before December 8, 2005, with the exception of Kline's allegation that Meiers instructed the payroll department to deduct money from his retroactively reinstated pay, though Kline does not base his civil rights claim on this action. Thus, the conduct of which Kline complains against the individual Defendants occurred five-and-a-half years before Kline filed his writ of summons in the Philadelphia County Court of Common Pleas. Kline offers no explanation for why he waited to file this litigation against the individual Defendants. The witch hunt of which Kline complains commenced in 2004 and led to his dismissal in 2005. Kline should have known his rights were violated at that time. Kline also accuses the City of Philadelphia of pursuing frivolous appeals against him. Accepting this as true, Plaintiff includes no allegations that any of the individual Defendants played any role in litigating the case against Kline. This litigation was commenced well after the statute of limitations expired for claims against the individual Defendants.

Plaintiff believes that the statue of limitations did not accrue until "Kline was finally paid his withheld back pay on March 8, 2010" or until "Kline was reinstated to his rightful position, [an] event that occurred on November 9, 2009." (Mem. of Law in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss at 7.) He relies on the continuing violation theory, in which a plaintiff can pursue a discrimination charge that began before the filing period if that plaintiff can show the act is part of an ongoing pattern of discrimination. *See Rush v. Scott Speciality Gases, Inc.*, 113 F.3d 476, 481 (3d Cir. 1997); *see also Myers v. Shaffer*, Civ. A. No. 11-1107, 2012 WL 1569594, at *6 (W.D. Pa. May 2, 2012) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)).

The continuing violation theory is an equitable exception to be narrowly applied; it is not an excuse for failing to use due diligence to bring claims before the statute of limitations expires. *See*

*Cowell*, 263 F.3d at 295. Kline offers no support for his contention that the relevant date is when he was reinstated to his job or when he received his back pay. Indeed, this contention runs contrary to the continuing violation theory, which covers prior acts of discrimination based upon another subsequent act of discrimination. It does not let a plaintiff assert expired claims based upon his or her theory of when the effects of the discrimination or civil rights violation finally ceased. Moreover, all of the actions cited in Plaintiff's Amended Complaint—including his termination, the filing of frivolous appeals, and the improper investigation—constitute discrete, independently actionable events and are thus not covered by the continuing violations theory. *See Baur v. Crum*, Civ. A. No. 08-1222, 2012 WL 1071143, at *6 (E.D. Pa. Mar. 30, 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112-14 (2002)).

        b.     *City of Philadelphia*

      The federal claims against the City of Philadelphia are also time-barred. For the City of Philadelphia to be held liable for a civil rights violation, the plaintiff must show that the City had an established policy or custom that resulted in the alleged constitutional violations. *See Blakey v. City of Pittsburgh Police Dep't*, 449 F. App'x 135, 137 (3d Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). The only policy to which Kline points is "the municipal policy and procedure which permitted the prosecution, discipline and discharge of employees such as Kline by agencies not designated by the City Code to do so." (Am. Compl. ¶ 88; *see also* Mem. of Law in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss at 5.) The events surrounding this alleged policy ceased with Kline's termination in 2005, and the statute of limitations has long run on these claims. *See Buelna v. City of Phila.*, Civ. A. No. 01-5114, 2002 WL 531538, at *2 (E.D. Pa. Apr. 8, 2002) ("The statute of limitations on a *Monell* claim is two years."). Furthermore, Kline alleges no policy

by the City to take frivolous appeals, and even if he did, the final appeal was taken on May 15, 2009, outside the two-year statute of limitations. Thus, there is no basis for finding the City of Philadelphia liable for any alleged civil rights violation.

2.    *Title VII and ADEA claims*

Kline's also alleges a claim for retaliatory discharge in violation of Title VII and a claim that Defendants violated the Age Discrimination in Employment Act ("ADEA") when he was terminated and replaced by a forty-two-year-old. Kline's seventh cause of action is for retaliatory discharge. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The ADEA forbids employers and employment agencies from discriminating against individuals aged forty and older based on their age with respect to hiring, firing, and conditions of employment. 29 U.S.C. § 623(a)(1) & (b); 29 U.S.C. § 631; *see also Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 299-300 (3d Cir. 2004).

With respect to Kline's Title VII claim, he was required to file a charge of discrimination with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice. *See Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001). This period is extended to 300 days if the complainant also initiates a complaint with a parallel state agency. *Id.* at 470. If the EEOC has not resolved the charge after 180 days, it will then issue a right to sue letter, which indicates to the party charging discrimination that he or she has exhausted his or her administrative remedies. *Id.* A plaintiff may bring a Title VII case in federal court within ninety days of receiving a right to sue letter. *Id.* However, "[a] complainant may not bring a Title VII

10

suit without having first received a right-to-sue letter." *Id*. This analysis applies to Kline's ADEA claim as well. *Arrington v. United Parcel Serv.*, Civ. A. No. 04-2450, 2005 WL 2475706, at *2-3 (D.N.J. Oct. 5, 2005).

Neither the Amended Complaint or Plaintiff's response to Defendants' motion states that, with respect to his Title VII or ADEA claims, Kline filed a charge with the EEOC or a parallel state agency, received a right to sue letter, or in any way attempted to exhaust his administrative remedies as required by law. *See Hornsby v. U.S. Postal Serv.*, 787 F.2d 87, 90 (3d Cir. 1986) (noting that complaint failed to state a claim because it did not state whether administrative remedies were exhausted prior to filing). Furthermore, it appears to the Court that Kline still has not filed a complaint to the appropriate authority, and that he is out of time to file such a complaint. Therefore, Kline's ADEA and Title VII claims are dismissed.

### B. Supplemental Jurisdiction for State Law Claims

Kline has brought a number of state law claims in addition to his federal claims. Specifically, he brings causes of action for wrongful use of civil proceedings, abuse of process, intentional infliction of emotional distress, wrongful discharge, and negligence. This Court has supplemental jurisdiction over Kline's Pennsylvania state law claims. However, a court "may decline to exercise supplemental jurisdiction if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Indeed, if the claim over which the district court has original jurisdiction is dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). None of these interests is implicated here. This case is at its beginning stages and given

that the case will return to the Philadelphia Court of Common Pleas, the Court discerns no additional convenience to the parties if the case remains in federal court. In fact, Plaintiff originally filed this litigation in state court. Finally, the only claims that remain involve Pennsylvania law, issues that can readily be determined by a Pennsylvania state court. Having dismissed the federal claims contained in Kline's Amended Complaint, the Court declines to exercise jurisdiction over his state law claims. *See Matthews v. Key Bank U.S.A. Nat'l Ass'n*, Civ. A. No. 99-1799, 1999 WL 398716, at *4 (E.D. Pa. June 17, 1999). The Court is faced with the issue of whether to remand the case or dismiss the remaining claims without prejudice to raise them in state court. *See Borough of W. Mifflin*, 45 F.3d at 788 ("[W]e believe that in a case that has been removed from a state court, a remand to that court is a viable alternative to a dismissal without prejudice."); *see also Datto v. Thomas Johnson Univ.*, Civ. A. No. 08-2154, 2009 WL 577458, at *3-4 (E.D. Pa. Mar. 4, 2009). Remand or dismissal without prejudice is a distinction without a difference here, because Kline's state law claims are tolled for a minimum of thirty days following dismissal once the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(d). However, in the interest of moving this case forward and because Plaintiff originally filed this matter in state court, this Court will remand this action to the Philadelphia County Court of Common Pleas.

IV.     CONCLUSION

The federal claims asserted in Kline's Amended Complaint are outside the statute of limitations. The Court declines to exercise supplemental jurisdiction over the state law claims. An Order consistent with this memorandum will be docketed separately.